No. 12-17360

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT
_____

MISHEWAL WAPPO TRIBE OF ALEXANDER VALLEY,
*Appellee,*

*v.*

KEN SALAZAR, in his official capacity as Secretary of the Interior, and
LARRY ECHO HAWK, in his official capacity as Assistant Secretary of the
Interior, and DOES 1-50, inclusive,
*Appellees,*

and

COUNTY OF NAPA and COUNTY OF SONOMA,
*Appellants-Intervenors-Defendants.*
_____

**APPELLANTS' OPENING BRIEF**
_____

Michael S. Cohen, Esq.
David H. Tennant, Esq. (SBN 132568)
Matthew J. Frankel, Esq. (SBN 256633)
Nixon Peabody LLP
One Embarcadero Center
18th Floor
San Francisco, California 94111
(415) 984-8200

*Attorneys for Appellants-Intervenors-Defendants*
*County of Napa and County of Sonoma*

# **TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ................................................................iv

STATEMENT OF JURISDICTION ...................................................1

STATEMENT OF THE CASE.............................................................2

ISSUES PRESENTED..........................................................................3

STATEMENT OF FACTS ....................................................................4

    A.    The California Rancheria Act and Termination of the
            Alexander Valley Rancheria .................................................4

    B.    The *Tillie Hardwick* Class Action Litigation ........................6

    C.    Plaintiff Commences this Action .........................................7

    D.    Napa and Sonoma Counties Intervene ..................................9

    E.    Plaintiff Files an Amended Complaint.................................12

    F.    Other Parties Seek Intervention...........................................13

    G.    Action is Reassigned From Judge Ware to Judge Davila .................14

    H.    Counties Seek Dismissal of the Amended Complaint ........................14

    I.    Denial of the Motion to Dismiss .........................................17

    J.    Counties Seek Certification of an Interlocutory Appeal ...................19

    K.    Plaintiff Moves to Revoke the Counties' Intervenor Status ..............20

    L.    Granting of the Motion to Revoke .......................................21

    M.    Counties Appeal and Apply for Expedited Briefing and Stay............22

i

ARGUMENT

I.   The District Court Erred in Granting Plaintiff's Motion to Revoke the Counties' Status as Intervening Defendants ...........................................23

     A    Applicable Law ...................................................................23

     B.   Standard of Review ............................................................25

     C.   The District Court Committed Legal Error by Misclassifying the Counties' Intervention Status as Permissive Under Rule 24(b)(2).....25

     D.   The District Court Compounded its Legal Error in Misclassifying the Counties as Permissive Intervenors by Misapplying Rule 24(a)(2)'s Requirements for Intervention as of Right.......................27

          1.   The Counties Have Significant Protectable Interests that Will Be Substantially Affected in a Practical Sense if Plaintiff Prevails in the Litigation ........................................28

          2.   The Counties Currently Exercise Meaningful Land Use Authority Over Vacant Federal Lands Located Within the Counties ...................................................30

          3.   The Counties Will Be Deprived of Regulatory Authority Over Federal Lands if They Are Taken Into Trust .................32

          4.   The Counties Will Experience Significant Off-Site Impacts From Any Commercial Development on Now-Vacant Federal Lands.........................................................................34

               a.   The Counties' Significant Protectable Interests Are Affected Directly by the Outcome of Plaintiff's Lawsuit Whether or Not Plaintiff Proceeds With Its Plan to Build and Operate a Casino ............................34

        b.    Intervention Is Proper When a State or Local Sovereign
              May Experience Off-Site Impacts From Activities On
              Federal Lands .................................................................36

     5.    Taking into Trust Vacant Federal Lands Will Create
           a Checkerboard of County and Tribal Jurisdiction
           That Will Impair the Counties' Regulatory Authority .............41

   E.    The District Court Abused Its Discretion in Rejecting
         Permissive Intervention.......................................................42

II.    The District Court Erred in Failing to Resolve the Threshold
       Jurisdictional Issue of Plaintiff's Standing....................................43

   A.    Standard of Review ............................................................43

   B.    Plaintiff Failed to Plead and Prove Standing ......................44

III.   The District Court Lacks Jurisdiction Over This Untimely-Filed Action.....51

   A.    Standard of Review ............................................................51

   B.    28 U.S.C. § 2401(a) Establishes a Jurisdictional Period
         of Limitations ...................................................................52

   C.    The District Court's Interpretation of Section 2401(a)
         As Non-Jurisdictional Is Legally Incorrect .........................52

CONCLUSION ....................................................................................58

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Aloe Vera of America, Inc. v. United States*,
580 F.3d 867 (9th Cir. 2009) ........................................................56, 57

*Arakaki v. Cayetano*,
324 F.3d 1078 (9th Cir. 2003) ..............................................23, 24, 25

*Augustine v. United States*,
704 F.2d 1074 (9th Cir. 1983) ....................................................49, 50

*Baxter v. United States*,
451 Fed. App'x. 868 (11th Cir. 2012) ........................................54, 55

*Biodiversity Legal Found. v. Badgley*,
309 F.3d 1166 (9th Cir. 2002) ............................................................50

*Cabazon Band of Mission Indians v. Wilson*,
124 F.3d 1050 (9th Cir. 1997) ....................................................10, 23

*California Coastal Comm'n v. Granite Rock Co.*
480 U.S. 572 (1987)......................................................................31, 32

*Carijano v. Occidental Petroleum Corporation, et al.*,
643 F.3d 1216 (9th Cir. 2011) ............................................................48

*Cedars-Sinai Medical Center v. Shalala*,
125 F.3d 765 (9th Cir. 1997) ....................................................passim

*Central N.Y. Fair Bus. Ass'n. v. Salazar*,
2010 U.S. Dist. LEXIS 17772 (N.D.N.Y. Mar. 1, 2010) ..................39

*Citizens for Balanced Use v. Montana Wilderness Assoc.*,
647 F.3d 893 (9th Cir. 2011) ................................................................1

*City of Sausalito v. O'Neill*,
386 F.3d 1186 (9th Cir. 2003) ............................................28, 38, 40

*City of Sherrill v. Oneida Indian Nation of N.Y.*,
544 U.S. 197 (2005)..............................................................14, 15, 41

*Crosby Lodge, Inc. v. Nat'l Indian Gaming Comm'n*,
   2008 U.S. Dist. LEXIS 98001 (D. Nev. Dec. 3, 2008) ........................................7

*Devita v. County of Napa*,
   9 Cal. 4th 763 (1995) ........................................................................................28

*Donnelly v. Glickman*,
   159 F.3d 405 (9th Cir. 1998) ......................................................................23, 25

*Dreier v. United States of America*,
   106 F.3d 844 (9th Cir. 1997) ............................................................................48

*Ferguson v. Greater Pocatello Chamber of Commerce, Inc.*,
   848 F.2d 976 (9th Cir. 1988) ..............................................................................1

*Forest Conservation Council v. U.S. Forest Serv.*,
   66 F.3d 1489 (9th Cir. 1995) ......................................................................24, 37

*Georgalis v. United States Patent & Trademark Office*,
   296 Fed. App'x 14 (Fed. Cir. 2008) ..................................................................55

*Hoffman v. United States*,
   266 F.Supp.2d 27 (D.D.C. 2003) ......................................................................54

*Hopland Band of Pomo Indians v. United States*,
   855 F.2d 1573 (Fed. Cir. 1988) ..................................................................52, 54

*Howard v. Blank*,
   2012 WL 4096370 (D.D.C., Sept. 19, 2012) ....................................................55

*John R. Sand & Gravel Co. v. United States*,
   552 U.S. 130 (2008) ..................................................................................passim

*Johnson v. Lucent Techs. Inc.*,
   653 F.3d 1000 (9th Cir. 2011) ....................................................................51, 52

*Kleppe v. New Mexico*,
   426 U.S. 529 (1976) ..........................................................................................30

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ..........................................................................................50

*Marley v. United States*,
  567 F.3d 1030 (9th Cir. 2009) ..........................................................1, 51, 55, 57

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
  132 S. Ct. 2199 (2012).....................................................................................36

*McCarthy v. Unites States*,
  850 F.2d 558 (9th Cir. 1988) ...........................................................................48

*McGough v. Covington Techs. Co.*,
  967 F.2d 1391 (9th Cir. 1992) .........................................................................23

*Molski v. Levon Investments, LLC*,
  231 Fed. App'x. 685 (9th Cir. 2007) ................................................................51

*Morgan v. McDonough*,
  726 F.2d 11 (1st Cir. 1984).......................................................................25, 27

*Norkunas v. Wynn Las Vegas, LLC*,
  343 Fed. App'x. 269 (9th Cir. 2009) ................................................................44

*Perry v. Proposition 8 Proponents*,
  630 F.3d 898 (9th Cir. 2011) ...........................................................................42

*Perry v. Schwarzenegger*,
  628 F.3d 1191 (9th Cir. 2011) ...................................................................39, 40

*Preminger v. Peake*,
  552 F.3d 757 (9th Cir. 2008) .....................................................................43, 44

*Public Citizen, Inc. v. Mukasey*,
  2008 U.S. Dist LEXIS 81246 (N.D. Cal. Oct. 9, 2008) ..................................57

*Rouse v. United States Dep't of State*,
  567 F.3d 408 (9th Cir. 2009) .....................................................................51, 52

*Safe Air for Everyone v. Meyer*,
  373 F.3d 1035 (9th Cir. 2004) ...............................................................48, 49, 50

*Savage v. Glendale Union High School Dist. No. 205*,
  343 F.3d 1036 (9th Cir. 2003) ...............................................................43, 44, 47

*Scotts Valley Band of Pomo Indians v. United States,*
    921 F.2d 924 (9th Cir. 1995) ....................................................... 24, 29

*Sierra Club v. Johnson,*
    2009 U.S. Dist. LEXIS 14819 (N.D. Cal. Feb. 25, 2009) ................................... 57

*Sierra Club v. Robertson,*
    960 F.2d 83 (8th Cir. 1992) ................................................. 38

*Sizova v. National Inst. of Standards & Tech.,*
    282 F.3d 1320 (10th Cir. 2002) ................................................. 50

*Smith v. Marsh,*
    194 F.3d 1045 (9th Cir. 1999) ................................................. 25

*Sw. Ctr. for Biological Diversity v. Berg,*
    268 F.3d 810 (9th Cir. 2001) ................................................. 40

*Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp.,*
    594 F.2d 730, 733 (9th Cir. 1979) ................................................. 48

*Tillie Hardwick v. United States,*
    2006 U.S. Dist. LEXIS 90855 (N.D. Cal. Dec. 7, 2006) ................................... 6

*United States v. Hinkson,*
    585 F.3d 1247 (9th Cir. 2009) ................................................. 25

*United Tribe of Shawnee Indians v. United States,*
    253 F3d 543 (10th Cir. 2001) ................................................. 44

*W. Va. Highlands Conservancy v. Johnson,*
    540 F. Supp. 2d 125 (D.D.C. 2008) ................................................. 55

*Warth v. Selden,*
    422 U.S. 490 (1975) ................................................. 48

*White v. Lee,*
    227 F.3d 1214 (9th Cir. 2000) ................................................. 47, 48

*Wilderness Soc'y v. U.S. Forest Serv.,*
    630 F.3d 1173 (9th Cir. 2011) ................................................. 24

*Wilton Miwok Rancheria v. Salazar*,
  2010 U.S. Dist. LEXIS 23317 (N.D. Cal. Feb. 23, 2010) ............................56, 57

*Wolfe v. Strankman*,
  392 F.3d 358 (9th Cir. 2004) ...............................................................................48

*Ynigues v. Arizona*,
  939 F.2d 727 (9th Cir. 1991) ...............................................................................39

## FEDERAL STATUTES

25 U.S.C. § 1902, *et seq.*...........................................................................................10

28 U.S.C. § 1291 ...........................................................................................................1

28 U.S.C. § 1292(b) ...........................................................................................3, 19, 57

28 U.S.C. § 1331 ...........................................................................................................1

28 U.S.C. § 1361 ...........................................................................................................1

28 U.S.C. § 2107(b) .....................................................................................................2

28 U.S.C. § 2401(a) ............................................................................................passim

28 U.S.C. § 2401(b) ............................................................................................ 55, 57

28 U.S.C. § 2501 ..............................................................................................11, 54, 55

1958 California Rancheria Act,
  Pub. L. No. 85-671, 72 Stat. 619, amended by, Pub. L. No. 88-419, 78
  Stat. 390 ................................................................................................5, 6, 49

## FEDERAL RULES AND REGULATIONS

26 Fed. Reg. 6875-76 (August 1, 1961) ..................................................................6

Fed. R. Civ. P. 12(b)(1) ......................................................................................passim

Fed. R. Civ. P. 12(b)(6) ......................................................................................passim

Fed. R. Civ. P. 24 ...............................................................................................passim

Fed. R. Civ. P. 24(a)(2)......................................................................passim

Fed. R. Civ. P. 24(b) .........................................................................passim


**CALIFORNIA STATUTES**

CAL. GOV'T CODE §§ 65351-65352.4 (West 2012)...................................10


**OTHER AUTHORITIES**

*Public Natural Resources Law* 5:4 (2d ed. 2007)......................................31

Salkin, *American Law of Zoning* § 3.2 (5th ed. 2008)..............................30

## STATEMENT OF JURISDICTION

Plaintiff-Appellee Mishewal Wappo Tribe of Alexander Valley ("Plaintiff") claims subject matter jurisdiction exists under 28 U.S.C. § 1331 and 28 U.S.C. § 1361. Intervenors-Defendants-Appellants County of Napa and County of Sonoma ("the Counties") assert subject matter jurisdiction is lacking because Plaintiff: (i) cannot establish Article III standing; and (ii) commenced this action beyond the jurisdictional period established by 28 U.S.C. § 2401(a).

The district court's Order Granting Plaintiff's Motion to Revoke Intervenor Status is final and appealable as to the Counties pursuant to 28 U.S.C. § 1291. (ER-1-9.)[1] *See Citizens for Balanced Use v. Montana Wilderness Assoc.,* 647 F.3d 893, 896 (9th Cir. 2011). This appeal also brings up for review the district court's denial of the Counties' motion to dismiss the Amended Complaint challenging the district court's subject matter jurisdiction. *See Marley v. United States,* 567 F.3d 1030 (9th Cir. 2009); *Ferguson v. Greater Pocatello Chamber of Commerce, Inc.,* 848 F.2d 976 (9th Cir. 1988). The district court denied the jurisdictional challenges in its Order Denying Intervenors' Motion to Dismiss. (ER-10-21.)

The district court's Order Granting Plaintiff's Motion to Revoke Intervenor Status was entered on September 28, 2012. (ER-1-9.) The district court's Order Denying Intervenors' Motion to Dismiss was entered on October 24, 2011. (ER-

---

[1] References to the Counties' Excerpts of Record are identified by: "(ER- __.)."

10-21.)  The Notice of Appeal was filed on behalf of the Counties on October 22,

2012.  (ER-22-24.)  This appeal is timely under 28 U.S.C. § 2107(b).

## STATEMENT OF THE CASE

The Counties intervened in a lawsuit brought by Plaintiff in the Northern

District of California against the Secretary of the Interior and other federal

defendants ("the Federal Defendants").  In that action, Plaintiff purports to seek

restoration of its congressionally-terminated status as a federal Indian tribe, as well

as the transfer of unspecified county lands into trust, and a determination that they

are "restored lands" within the meaning of the Indian Gaming Regulatory Act, so

as to allow casino gaming, despite the Act's prohibition against gaming on lands

acquired after October 17, 1988.  The Counties' sought and obtained intervention

as of right under Rule 24(a)(2) of the Federal Rules of Civil Procedure to protect

their world renowned agricultural assets – which are safeguarded by rigorous

preservation laws –from unregulated commercial development, including but not

limited to a Las Vegas-style casino.

As fully participating intervening defendants, the Counties challenged the

district court's subject matter jurisdiction through a motion to dismiss under Rule

12(b)(1) of the Federal Rules of Civil Procedure.  That threshold jurisdictional

challenge was premised on the inability of the modern tribal plaintiff to prove

Article III standing (*i.e.*, injury in fact to Plaintiff as opposed to an unrelated

historic group of Indians), and the patent untimeliness of Plaintiff's restoration lawsuit, which was commenced more than fifty years after the Congressional act of termination. The Counties maintain that the applicable statute of limitations, 28 U.S.C. § 2401(a), is jurisdictional and subject to neither waiver nor equitable estoppel.

The district court denied the motion to dismiss and also denied the Counties' follow-on motion under 28 U.S.C. § 1292(b) to certify for immediate appeal the question of the statute of limitations' impact on the district court's subject matter jurisdiction. After the Counties served discovery demands on Plaintiff relating to the Article III standing issue (and the question of Plaintiff's laches), Plaintiff moved to revoke the Counties' status as intervening defendants. The district court granted the motion.

The Counties now appeal from that order and seek review of whether or not the district court has subject matter jurisdiction.

## ISSUES PRESENTED

1. Whether the district court erred in revoking the Counties' status as intervening defendants on grounds that the Counties had lost their protectable interest under Rule 24(a)(2) by reason of Plaintiff's amendment of its complaint two years earlier, which occurred before the court granted the Counties' motion to intervene?

2.   Whether the district court abused its direction in denying the Counties the right to continue in the case as permissive intervenors under Rule 24(b)(2) based on its finding that the Counties had caused "undue delay" by challenging the district court's subject matter jurisdiction?

3.   Whether the district erred in denying the Counties' motion to dismiss under Rule 12(b)(1) based on Plaintiff's failure to plead and prove injury in fact to confirm Article III standing?

4.   Whether the district court erred in denying the Counties' motion to dismiss under Rule 12(b)(1) and (6) based on Plaintiff's failure to timely commence its action within the six-year limitations period of 28 U.S.C. 2401(a), and whether that limitations period is jurisdictional such that it cannot be waived and is not subject to equitable tolling?

## <u>STATEMENT OF FACTS</u>

A.    The California Rancheria Act and Termination of the
       <u>Alexander Valley Rancheria</u>

During the early part of the 20th century the United States government pursued a policy of acquiring lands throughout California, commonly known as "rancherias," for the benefit of landless Indians.  One such Rancheria was the 54-acre Alexander Valley Rancheria ("AVR"), situated in Sonoma County, which was acquired through purchases in 1909 and 1913.  (ER-286.)  The AVR was

established for the benefit of Indians living in the Alexander Valley. (ER-286-287.)

Some fifty years later, Congress enacted the 1958 California Rancheria Act, Pub. L. No. 85-671, 72 Stat. 619, *amended by* Pub. L. No. 88-419, 78 Stat. 390, which provided, *inter alia*, for the termination of federal supervision over forty-one California rancherias, the distribution of the lands and assets of those rancherias to individual Indians, and the termination of any trust relationship between the United States and the Indians of those terminated rancherias. The AVR was among those slated for termination.

As of April 1951, the Indians of Alexander Valley, who were of mixed Pomo and Wappo ancestry and only occasionally occupied the AVR, had completely abandoned the Rancheria and were living and working among non-Indians. (ER-305.) The sole occupants of the AVR were James Adams, of unknown (but neither Pomo nor Wappo) tribal affiliation and Hawaiian ancestry, his Caucasian wife and children, and an African-American squatter who lived in a shed. (ER-305.)

After the Bureau of Indian Affairs publicized its proposal to terminate the AVR and distribute its assets, one Pomo-Wappo family, headed by William McCloud, returned to the Rancheria to make a claim. No other Pomo-Wappo

Indians asserted an interest in the Rancheria. A distribution plan that divided the land between Adams and McCloud was proposed. (ER-307-309.)

On July 6, 1959 the Secretary of the Interior accepted the proposed Alexander Valley Distribution Plan, which was finalized on September 25, 1959. (ER-309-310.) The Interior Secretary published a notice in the Federal Register (26 Fed. Reg. 6875-76) on August 1, 1961, confirming that: (i) title to the lands of the AVR had passed from the United States Government pursuant to the approved distribution plan; and (ii) the trust relationship between the United States and the individuals to whom AVR lands were transferred had been terminated.

B.    The *Tillie Hardwick* Class Action Litigation

The AVR was among thirty-four rancherias terminated by the California Rancheria Act. Various groups of Indians challenged these terminations in a class action filed in 1979, by which the class plaintiffs sought restoration of their status as Indians as well as "the right to reestablish their tribes as formal government entities." *See Tillie Hardwick v. United States*, 2006 U.S. Dist. LEXIS 90855 at *3-4 (N.D. Cal. Dec. 7, 2006). The litigation was settled in 1983 with respect to the Indians of seventeen of the rancherias, but not the AVR. *Id.* The settlement provided that the status of the named individual Indians would be restored, and that the Interior Secretary would recognize the Indian tribes, bands, communities, or

-6-

groups for the seventeen rancherias listed, as Indian entities with the same status they possessed prior to termination. *Id*. at *4.

The group of Indians who endeavored to advance a claim on behalf of the AVR (and its historic transient occupants) did not meet the class requirements in *Tillie Hardwick* because they could not count among themselves distributees of the AVR, or their heirs, legatees, or successors in interest. *See* Stipulation for Entry of Judgment, dated July 15 and 19, 1983, and Order Dismissing Claim By Class Members From Alexander Valley Rancheria Without Prejudice, dated December 23, 1985, in *Tillie Hardwick, et al. v. United States*, Civil No. C-79-1910-SW.

There are no references in the *Tillie Hardwick* litigation to the "Mishewal Wappo Tribe of Alexander Valley." Rather, all pertinent references in that case are to the "Alexander Valley Rancheria" and its putative individual class members.

C.    Plaintiff Commences this Action

Half a century after the termination of the AVR a group identifying itself as "The Mishewal Wappo Tribe of Alexander Valley" commenced this action against Interior Secretary Ken Salazar and "Does 1-50" as defendants. According to the Complaint, "[p]laintiff is an American Indian Tribe consisting of Indian members and their descendants, and/or their Indian successors in interest, for whose benefit

the United States acquired and created the Mishewal Wappo Tribe of Alexander Valley [sic], a parcel of land located in Sonoma County, California."[2]  (ER-529.)

Plaintiff's initial Complaint alleged, *inter alia*, that the purported termination of the AVR was improper and unlawful, and the pleading demanded, *inter alia*, that the court order the Interior Secretary to:

(1)  "include Plaintiff on the list of recognized Indian tribes maintained pursuant to the Federally Recognized Indian Tribe List Act of 1994, 25 U.S.C. § 479a-1(a)."

(2)  "immediately take into trust such lands owned and designated by the Tribe located within the historically aboriginal territory of the Mishewal Wappo Tribe of Alexander Valley . . . with such lands to be considered 'Indian Country' as defined in 18 U.S.C. § 1151 and 'restored lands' as defined by [the Indian Gaming regulatory Act or "IGRA"] 25 U.S.C. § 2719(b)(1)(B)(iii)."

(3)  "identify and transfer to the Tribe, as trust lands . . . all public lands held by the Department of the Interior which

---

[2]  The allegation that the Mishewal Wappo tribe is a parcel of land is obviously inaccurate.  More significant, there is no historical reference to the "Mishewal Wappo Tribe of Alexander Valley" with regard to the AVR.  The occasional inhabitants of the rancheria were identified by geography only (*i.e.*, "Indians of Alexander Valley") by the Department of the Interior throughout the existence (and termination) of the rancheria.  The "Mishewal Wappo Tribe of Alexander Valley" is a modern-day creation, founded in 2007 and registered as a California corporation in 2009.  (ER-187-188, 196, 198, 200.)  Even so, the Complaint and Amended Complaint promote a form of revisionist history whereby they re-name the Indians of Alexander Valley the "Mishewal Wappo Tribe of Alexander Valley" and the Alexander Valley Rancheria the "Mishewal Wappo Rancheria." (*See, e.g.*, ER-532-533 at ¶¶ 19-23.)

> are not currently in use and are available for transfer that
> are within the Tribe's historically aboriginal land."

(ER-554-555.)

Plaintiff's request to have the lands declared "restored lands" under IGRA is an objective and undeniable manifestation of the tribe's stated interest to build and operate a casino on the subject lands.  There is no other reason to seek "restored lands" status under IGRA.

### D.     Napa and Sonoma Counties Intervene

The Counties moved to intervene after learning of Plaintiff's lawsuit from a newspaper report in January 2010.  (ER-479.)  The Counties argued that they met each of the four well-established prerequisites for intervention as a matter of right under Rule 24(a)(2):

(i)     the movant has "a significant protectable interest" relating to the property or transaction that is the subject of the action;

(ii)    the disposition of that action, may as a practical matter, impair or impede the applicant's ability to protect that interest;

(iii)   the application is timely; and

(iv)    the existing parties may not adequately represent the applicant's interests.

(ER-479-487, 498-506.)[3]  Specifically, the Counties' motions and supporting

papers demonstrated a "significant protectable interest" in the property or matters

at issue in the litigation.  Among other things, the Counties argued that the relief

sought in the action would dramatically alter Plaintiff's relationship with the

Counties[4], and diminish the Counties' ability to protect and preserve their highly

prized viticulture through aggressive agricultural preservation laws.  (ER-471-488,

489-509.)  Furthermore, given Plaintiff's demand that the district court classify any

lands transferred for Plaintiff's benefit as "restored lands" under the Indian

Gaming Regulatory Act, 25 U.S.C. § 2701, *et seq.* – a classification having no

significance other than as to casino gaming – the Counties argued that Plaintiff's

manifest intent to develop a casino implicated "substantial adverse impacts to

---

[3]  *See Cabazon Band of Mission Indians v. Wilson*, 124 F.3d 1050, 1061 (9th Cir. 1997), *cert den.,* 118 S.Ct. 2319 (1998).

[4]  County governments in California undertake a vast array of governmental responsibilities to their residents without regard to ethnicity.  When a group of County residents self-identify as Native Americans and successfully seek federal recognition as an Indian tribe, the relationship between the County and those citizens is fundamentally altered.  The County assumes new obligations under the Indian Child Welfare Act (25 U.S.C. § 1902, *et seq.*) and other federal laws directed to Native Americans, as well as under state laws such as CAL. GOV'T CODE §§ 65351-65352.4 (West 2012), which impose a requirement for special tribal consultation on all General Plan amendments. Moreover, in their capacity as a newly-recognized tribe possessing the legal status of "a domestic dependent nation," these residents may exercise governmental powers and jurisdictional authority in conflict with the County, including asserting tribal sovereignty as a barrier to enforcement of state laws that apply to every other County resident.

aesthetic, air, water, biological, and other environmental resources."  (ER-502.)
The Counties' moving papers likewise demonstrated that the intervention request
was timely and that the Federal Defendants were not adequately protecting the
Counties' interests.  (ER-471-488, 489-509.)

As an "alternative" to intervention as of right the Counties' motion also
requested permissive intervention under Fed. R. Civ. P. 24(b).  (ER-487-488, 506.)

In further support of its application Napa submitted a proposed Answer to
the Complaint" in which it asserted various affirmative defenses, including
Plaintiff's failure to timely commence the action under the applicable six-year
limitations period,[5] laches, and lack of Article III standing.  (ER-449-465.)

Neither Plaintiff nor the Federal Defendants opposed the Counties' motions
for intervention, and each filed a "Statement of Non-Opposition" to the
applications.[6]  (ER-410-412, 413-414.)

On May 26, 2010, the district court (Hon. James Ware) granted the
Counties' motions to intervene "*[f]or good cause shown*, and in light of the
statements of non-opposition."  (ER-408 at ¶ 1 (emphasis added).)  The court

---

[5]    The Counties' motion papers mistakenly reference 28 U.S.C. § 2501 as the
applicable statute of limitations.  In fact, the applicable limitations period is set
forth in 28 U.S.C. § 2401(a), *see infra*.

[6]    Plaintiff's statement of non-opposition suggested the Counties' intervention be
limited to "those interests that can be shown to directly affect the proposed
intervenors, *i.e.*, land acquisition."  This request was disregarded by the court,
and no restrictions of any kind were placed on the Counties' intervention.

imposed no conditions or limitations on the Counties' participation in the action as intervening defendants.  (ER-408-409.)

      E.    <u>Plaintiff Files an Amended Complaint</u>

On May 10, 2010, after the Counties filed their motions for intervention and shortly *before* Plaintiff filed its "Statement of Nonopposition," Plaintiff filed its "Amended Complaint for Declaratory and Injunctive Relief" ("Amended Complaint").  (ER-415.)  Apart from joining then-Assistant Secretary of the Interior Larry Echo Hawk as a defendant, the amended pleading omits the demand that the Interior Secretary "immediately take into trust such lands owned and designated by the Tribe located within the historically aboriginal territory of the Mishewal Wappo Tribe of Alexander Valley."  (ER-445-446.)  However, the Amended Complaint leaves in place the language asking the Secretary "to take into trust such lands owned and designated by the Tribe located within the Mishewal Wappo Tribe of Alexander Valley historically aboriginal territory."  (ER-415-416 at ¶ 1.)  The pleading also reiterates the earlier demand that the Secretary transfer into trust surplus federal public lands "that are within the Tribe's historically aboriginal land," and "immediately take action such that those lands are considered . . . 'restored lands' as defined by 25 U.S.C. § 2719(b)(1)(iii)."  (ER-445-446 at ¶¶ "D," "E.")

F.     Other Parties Seek Intervention

In late 2010 and early 2011, various municipal entities in Napa County ("the Cities") filed motions seeking intervention as of right, or in the alternative, permissive intervention.  (Dkt. 68, 75, 86.)  The Cities alleged "substantial sovereignty, taxation, land use, regulatory and other interests in the property potentially subject to Plaintiff's action and in the requested transaction (*i.e.*, compelling the Secretary to immediately take land into trust and consider it 'restored lands' eligible for gaming)."  (Dkt. 68 at p. 12, 75 at p. 12, 86 at p. 12.)

In arguing that the Cities lacked a significant protectable interest in the litigation Plaintiff incorrectly stated that "Plaintiff's Complaint, if successful would *not* result in land acquisition of any kind." (ER-400-401.)  Plaintiff's counsel later corrected himself during oral argument of the Counties' motion to dismiss, saying the tribe was seeking to have the court order the government to take federal surplus lands into trust for the tribe's benefit -- "the land we are asking to be transferred."[7]  (ER-170-171.)

The district court (Judge Ware) denied the Cities' motions to intervene by order dated January 28, 2011 which, *inter alia*, rejected the Cities' assertion that

---

[7]    As recently as February 21, 2012, Plaintiff reiterated that it seeks a land transfer in this action.  In support of its motion to revoke the Counties' intervenor status, Plaintiff informed the district court that "Plaintiff only seeks restoration of status as a tribe by this action *and a grant of lands that are held by the Department of the Interior.*" (ER-98 (emphasis added).)

-13-

they possess significantly protectable interests, noting that "any prayed for lands are located within federal jurisdiction and are not identified as within, or even nearby, the Cities." (ER-393.) Further, in denying the alternative relief sought by the Cities, *i.e.*, permissive intervention, the court noted that "[t]he Complaint does not pray for Cities' land to be taken into trust." *Id.* The denial of the Cities' motions to intervene was without prejudice and suggests that those municipalities would have standing to intervene if their interests were directly implicated, as the Counties' interests are. *Id.*

### G.     Action is Reassigned From Judge Ware to Judge Davila

By order dated April 25, 2011, this action was reassigned to the Hon. Edward J. Davila for all further proceedings.

### H.     Counties Seek Dismissal of the Amended Complaint

By an amended motion filed on May 16, 2011, the Counties sought dismissal of the Amended Complaint on four principal grounds: (i) Plaintiff's claims are time-barred under 28 U.S.C. § 2401(a); (ii) Plaintiff lacks Article III standing, having failed to allege or prove a factual connection to the distributees of the lands comprising the former AVR, or to the larger group of Pomo/Wappo Indians who occasionally occupied the AVR before abandoning it; (iii) Plaintiff's claims are barred by laches, both in its traditional form and under the "*Sherrill* formulation" articulated by the Supreme Court in *City of Sherrill v. Oneida Indian*

-14-

*Nation of N.Y.*, 544 U.S. 197, 213 (2005); and (iv) the remedy of "tribal restoration" is unavailable since it presents a non-justiciable political question. (Dkt. 145 at pp. 10-24.)

Plaintiff opposed the Counties' motion and argued, *inter alia*, that the six-year limitations period of 28 U.S.C. § 2401(a) is not a "jurisdictional" period, but merely a "rebuttable affirmative defense" that could be waived or equitably tolled.[8] (Dkt. 147 at pp. 4-12.)

The Federal Defendants asked the district court to deny the Counties' dismissal motion and revisit whether the Counties should remain in the case as intervening defendants, complaining that "having been allowed into this case, the Counties have taken an unnecessarily contentious stance that seeks to disrupt any further efforts towards a negotiated resolution."[9]  (Dkt. 146 at p. 6.)  Regarding the prospects for settlement, the Federal Defendants advised the court that the "Plaintiff and Defendants have made substantial progress [toward a settlement] and

---

[8]   Plaintiff could not point to any evidence that the Federal Defendants had waived the limitations defense.  In fact, as affirmative defenses in both the initial and amended complaints, the Federal Defendants asserted that Plaintiff's claims were time-barred.  (ER-525; ER-67.)

[9]  This contention was surprising because the Counties' motions to intervene expressed the concern that Secretary Salazar was not asserting and/or pressing the questions of whether the action was timely filed and whether Plaintiff possessed Article III standing (ER-486; ER-507) and Napa County had submitted a proposed Answer to the Complaint outlining the defenses it intended to pursue.  (ER-449-465.)

-15-

expect to continue working toward a final settlement agreement that can be circulated for approval by the Plaintiff and by the necessary officials of the United States Department of the Interior and Department of Justice." *Id.*

Despite opposing the Counties' motion to dismiss and asking the district court to revoke their intervenor status, the Federal Defendants advised the court that the federal government would take no position on the question of Plaintiff's Article III standing. (Dkt. 146 at p. 11, n. 10.)

The Federal Defendants' "no comment" on Plaintiff's standing was remarkable, inasmuch as the federal government is uniquely positioned to know whether or not Plaintiff bears the requisite relationship to the historic Indians of Alexander Valley and the distributees of the AVR's assets. Unlike the Counties, the Federal Defendants have unfettered access to Plaintiff's current tribal membership rolls.[10] Moreover, the Federal Defendants dealt directly with Plaintiff for several years in the context of the group's efforts to obtain administrative restoration, and are the custodians of the historical records regarding the creation,

---

[10] The Counties sought those membership rolls from the federal government under FOIA. The federal government refused to disclose the rolls, however, in light of Plaintiff's privacy claim. (ER-187; ER-190 at § 6.) Plaintiff believes it has no obligation to disclose its membership rolls in this litigation, despite its burden to establish Article III standing: "The Tribe is confident that the facts it has presented, will demonstrate that it satisfies the proper standard for standing in this case. Plaintiff has submitted its membership records to the Bureau of Indian Affairs Regional Office since the suit was filed." (Dkt. 139 at p. 25.)

habitation, and termination of the AVR.  The Federal Defendants' silence on this

core issue is additionally noteworthy because a legitimately motivated defendant

would press hard on a plaintiff's apparent lack of standing.  Instead, the Federal

Defendants side-stepped the issue entirely.  (Dkt. 146 at p. 7, n.10.)

## I.     Denial of the Motion to Dismiss

The district court (Judge Davila) denied the Counties' motion to dismiss by

order dated October 24, 2011.  (ER-10-21.)  As to the issue of standing, the court

did not find that Plaintiff had met its burden to prove Article III standing and did

not comment on the proof offered (or withheld) by Plaintiff.  Instead, the court

concluded that the "evidence supplied by the Counties [*i.e.*, the Report of noted

ethnohistorian and expert on Indians of the American West, Stephen Dow

Beckham, Ph.D.] is insufficient to create a factual dispute as to that issue."  (ER-

14.)  The court held that:

> the Counties' evidence fails on a preliminary level to
> raise a factual dispute requiring resolution under [FRCP]
> 12(b)(1) . . . .  Furthermore, the court finds in the interest
> of fairness that *the Tribe should be provided with an
> opportunity to oppose the factual underpinnings of the
> Counties' evidence, rather than having to respond to
> such a complex matter through this rather abbreviated
> dismissal process.*[11]

---

[11]   The district court did not articulate why it believed Professor Beckham's
lengthy historical report, based on contemporaneous historical records obtained
from the Department of the Interior's archives, failed to raise a factual dispute
as to Plaintiff's standing. Nor did the court make any reference to the fact that

*(Footnote continued on next page)*

(ER-16 (emphasis added).)

The district court also rejected the Counties' assertion that the action was untimely commenced, holding that Section 2401(a) is not a jurisdictional period of limitations, citing *Cedars-Sinai Medical Center v. Shalala*, 125 F.3d 765, 770 (9th Cir. 1997). The court acknowledged that the "continued vitality" of *Cedars-Sinai* has been questioned by this Court in light of the Supreme Court's more recent holding in *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130 (2008), but nevertheless ruled that *Cedars-Sinai* "remains the law of this circuit." (ER-17.)

Finally, the court declined the Federal Defendants' invitation to review the Counties' continued participation in the action:

> As the docket reveals, the Government and Tribe did not oppose the Counties' motion for intervention, and the Counties were granted unqualified leave to intervene by this court's predecessor with the apparent acquiescence of all involved. *Thus, the Counties must be treated as if they were original named parties with the ability to raise arguments, in the same way that the Tribe and the Government may raise arguments.*

---

in response to Dr. Beckham's 100-plus page report, Plaintiff submitted only a conclusory, 3-page affidavit of Sonoma State University Professor Edward D. Castillo who took issue with Dr. Beckham's methodology but offered no affirmative proof of his own. (ER-182-184.) Moreover, the court did not engage in its own analysis of the historical record relating to the AVR or its transient inhabitants, or the relationship between the current modern tribal plaintiff and the historic group of Indians who occasionally lived on the Rancheria.

-18-

(ER-13 at fn. 1 (emphasis added) (citations omitted).)

> J.    Counties Seek Certification of an Interlocutory Appeal

Following denial of their motion to dismiss, the Counties sought interlocutory appellate review under 28 U.S.C. § 1292(b) of the following question:

> Whether the Supreme Court's decision in *John R. Sand & Gravel Co. v. United States,* 552 U.S. 130 (2008) effectively overruled the decision of the Ninth Circuit Court of Appeals in *Cedars-Sinai Medical Center v. Shalala*, 125 F.3d 765 (9th Cir. 1997), such that the statutory limitations period established by 28 U.S.C. § 2401(a) is a jurisdictional period of limitations which cannot be waived, and as to which the doctrine of equitable tolling does not apply.

(ER-110.)

Shortly after submission of their motion, the Counties served a document request upon Plaintiff by which they sought the production of documents relating to Plaintiff's standing and the issue of laches – the two issues which the district court suggested required further exploration and development through discovery. (ER-14.)  Plaintiff has never provided a substantive response or a single document in response to that request.

The district court denied the certification motion on February 1, 2012, finding that an immediate appeal would not materially advance resolution of the case.  (ER-108.)  The court noted that "this case will be resolved in its entirety

through cross-motions for summary judgment under the Administrative Procedure Act," and that "*this case is now prepared to proceed to discovery* and disposition by motion, and the court is prepared to provide a schedule to aid in the efficient development of that process" (emphasis added).  (ER-109.)

### K.    Plaintiff Moves to Revoke the Counties' Intervenor Status

Three weeks later, with the Counties pursuing discovery directed to standing and laches, Plaintiff moved to terminate the Counties' status as intervenors and have them dismissed from the action.  (ER-90.)  Curiously, the Federal Defendants, who had previously asked the court to revisit the Counties' intervenor status (Dkt. 146), did not join in Plaintiff's motion to revoke; instead they filed another statement of non-opposition.  (ER-75-77.)

Plaintiff's argument for revocation was predicated on the amendment of its initial complaint some *twenty-two months earlier* which predated the Plaintiff's Non-Opposition to the Counties' Motions to Intervene: "[p]laintiff no longer asserts any demand for relief that relates specifically to the Counties."  (ER-95.) Plaintiff also harkened back to Judge Ware's denial of the Cities' motions for intervention *one year earlier*, and argued that "[t]he Counties stand in precisely the same position as the Cities with respect to their status as potential intervenors . . ." (ER-96.)  In addition, Plaintiff belittled the threshold issues of standing and timeliness as only "peripherally relevant" and not "within [the Counties'] claimed

interests nor central to either the Plaintiff or Federal Defendants' arguments."
(ER-101.)  Finally, Plaintiff characterized as "onerous" the Counties' pursuit of
discovery regarding Plaintiff's standing because "the Federal Defendants have not
asserted said challenge and it is outside of the Counties' claimed interest."  (ER-
99.)

      L.    <u>Granting of the Motion to Revoke</u>

      On September 28, 2012, after dispensing with previously-scheduled oral
argument on the motion, the district court issued an order revoking the Counties'
intervenor status and terminating the Counties' participation in the action.  (ER-1-
9.)  In doing so, the district court reversed not only the initial determination of
Chief Judge Ware, owing to alleged "changed circumstances" that had occurred
nearly *two years earlier*, but also its own earlier holding that the Counties must be
treated as fully participating defendants, entitled to pursue affirmative defenses.
The order also represents a repeal of the court's prior commitment to resolve the
defenses of standing and laches through discovery.

      The district court evaluated the question of intervention *de novo* and
concluded that the Counties do not have a "significant protectable interest relating
to the property or transaction that is the subject of the action," finding that
Plaintiff's amendment of the Prayer for Relief (by which "the Tribe now seeks [for
transfer] only lands already held by the Department of the Interior") "seemingly

-21-

nullifies any interest the Counties may have in sovereignty, taxation, land use, or regulatory power." (ER-4.) The court also concluded that the Counties' articulated concerns over Plaintiff's interest in developing a gaming casino on lands sought to be taken into trust (by asking that they be characterized as "restored lands" under the Indian Gaming Regulatory Act) "assume[] too much about future events not at issue in this case" and "are too remote to meet the 'relationship test.'" (ER-6.)

Based on its *de novo* evaluation under Rule 24, the district court classified the Counties' earlier intervention as permissive, rather than as of right. (ER-8.)

Moreover, lamenting that "the Counties – as peripheral players to this lawsuit – have now become its driving force," the court concluded that "allowing [the Counties] to remain in this case will cause further *undue delay and prejudice* to the named parties, [and] the court has determined that the Counties' status as permissive intervenors should be revoked" (emphasis added). (ER-9.)

M.     <u>Counties Appeal and Apply for Expedited Briefing and Stay</u>

On October 22, 2012, the Counties filed their Notice of Appeal from the order revoking their status as intervenors, from the order denying their motion to dismiss the Amended Complaint, and from all other orders that are separately appealable. (ER-22-24.) On November 6, 2012, the Counties applied to this Court to expedite their appeal and to stay the entry of any judgment by the district court,

while their appeal is pending.  By Order filed on January 22, 2013 this Court denied that part of the Counties' motion seeking a stay and granted the unopposed motion to expedite this appeal, placing the matter on this Court's June 2013 calendar.

## **ARGUMENT**

**I.    The District Court Erred in Granting Plaintiff's Motion to Revoke the Counties' Status as Intervening Defendants.**

A.    Applicable Law

Rule 24 of the Federal Rules of Civil Procedure, governing intervention, deserves "liberal construction in favor of intervention."  *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th  Cir. 2003); *Donnelly v. Glickman,* 159 F.3d 405, 410 (9th Cir. 1998); *McGough v. Covington Techs. Co.*, 967 F.2d 1391, 1394 (9th Cir. 1992) ("Generally, Rule 24(a)(2) is construed broadly in favor of proposed intervenors and we are guided primarily by practical considerations.") (internal quotation marks and citations omitted).

An applicant seeking intervention as a matter of right under Rule 24(a)(2) (as noted *supra*, at p. 9) must satisfy a four-part test that includes demonstrating that it has "a significant protectable interest" relating to the property or transaction that is the subject of the action, and that the disposition of that action may, as a practical matter, impair or impede the applicant's ability to protect that interest. *Cabazon Band of Mission Indians v. Wilson*, 124 F.3d 1050, 1061 (9th Cir. 1997),

*cert den.,* 118 S.Ct. 2319 (1998). An interest is "protectable" under Rule 24 "if the interest is protectable under some law and there is a relationship between the legally protectable interest and the claims in issue." *Arakaki*, 324 F.3d at 1083. The "relationship" is viewed in "practical" terms; "no specific legal or equitable interest need be established." *Forest Conservation Council v. U.S. Forest Serv*., 66 F.3d 1489, 1493 (9th Cir. 1995); *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1181 (9th Cir. 2011) ("A putative intervenor will generally demonstrate a sufficient interest for intervention as of right . . . if 'it will suffer a practical impairment of its interests as a result of the pending litigation.'") (quoting *California ex rel. Lockyear v. United States*, 430 F.3d 436, 441 (9th Cir. 2006)). *See* Rule 24 Advisory Committee Notes ("if an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general matter, be entitled to intervene.").

This Court has recognized that county and municipal governments have a protectable interest in their taxing and regulatory authority and may intervene as a matter of right in proceedings that seek to transfer county or municipal land into trust for the benefit of a tribe because of the impairment of that governmental authority. *See Scotts Valley Band of Pomo Indians v. United States*, 921 F.2d 924, 927-28 (9th Cir. 1995).

-24-

B.    Standard of Review

This Court reviews *de novo* the district court's denial of a motion for intervention as a matter of right under Rule 24(a)(2).  *Arakaki,* 324 F.3d at 1082; *see also Morgan v. McDonough*, 726 F.2d 11, 14-15 (1st Cir. 1984) (applying *de novo* review to ruling terminating intervention).

A district court's denial of a motion seeking permissive intervention under Rule 24(b)(2) is reviewed for abuse of discretion.[12]  *Donnelly*, 159 F.3d at 411.  A district court abuses its discretion by failing to apply the correct legal standard, or by applying the correct legal standard in a manner that is "illogical," "implausible," or without support in the record.  *United States v. Hinkson*, 585 F.3d 1247, 1261-62 (9th Cir. 2009); *see also Smith v. Marsh,* 194 F.3d 1045, 1049 (9th Cir. 1999) (*citing Coalition For Economic Equality v. Wilson*, 122 F.3d 692, 701 (9th Cir. 1977) ("abuse of discretion occurs if the district court bases its decision on an erroneous legal standard or on clearly erroneous findings of fact.")

C.    The District Court Committed Legal Error by Misclassifying the Counties' Intervention Status as Permissive Under Rule 24(b)(2).

The district court's conclusion that the Counties were granted only permissive intervention status suffers from four principal deficiencies.  The court

---

[12]    In the absence of a district court's abuse of discretion, this Court lacks jurisdiction to hear appeals from the denial of motions seeking permissive intervention under Rule 24(b)(2).  *See Donnelly*, 159 F.3d at 411.

did not (i) acknowledge or apply circuit precedent endorsing the liberal construction of Rule 24 and favoring intervention; (ii) look to the initial pleading upon which Judge Ware granted intervention in May 2010; (iii) analyze the record upon which Judge Ware granted intervention; or (iv) seek to evaluate the legal effect of the grant of an unopposed motion seeking intervention as a matter of right and permissive intervention only in the alternative.  (ER-408-409.)

Plaintiff's argument that the Counties were permitted to intervene only permissively under Rule 24(b)(2) finds no support in the record or the law.  If Plaintiff believed the Counties were entitled to intervene permissively but not as of right, it was incumbent on Plaintiff to oppose the motion for intervention as a matter of right.  That was the primary relief sought by the Counties and what the district court necessarily granted.  Having failed to interpose any objection, Plaintiff cannot now argue that the district court granted only the Counties' alternative request for relief.

Plaintiff's improper collateral challenge to the order granting intervention is also barred by principles of waiver and laches.  Plaintiff did not argue at the time of intervention by the Counties that its amendment to the complaint eliminated the basis for finding a protectable interest under Rule 24(a)(2).  Instead, Plaintiff stated (in its Statement of Non-Opposition) that the Counties' intervention ought to be limited to issues relating to land acquisition – a limitation that was not accepted by

the district court. Plaintiff's Statement necessarily waived all other arguments relating to the intervention motions.

While the Counties' status as intervenors as of right under Rule 24(a)(2) might have been terminated upon a proper showing of truly changed circumstances that eliminated their protectable interests after their motions for intervention were granted (*see Morgan*, 726 F.2d 11, *supra*), that did not happen here. Instead, Plaintiff waited two years to challenge the Counties' participation in the action, reaching back to a 2010 pleading amendment to justify its effort. This was a transparent attempt to avoid the Counties' discovery request that Plaintiff finds "onerous," but which go to the central question of standing and the district court's subject matter jurisdiction. The district court's legal conclusion that the Counties were only granted permissive intervention is wrong as a matter of law and that error infected the court's legal analysis relating to the Counties' efforts to remain in the case.

> D.  The District Court Compounded its Legal Error in Misclassifying the Counties as Permissive Intervenors by Misapplying Rule 24(a)(2)'s Requirements for Intervention as of Right.

The district court erroneously concluded that the Counties did not meet the requirements for intervention as of right under Rule 24(a)(2), finding the Counties could not identify a significant protectable interest or demonstrate how any such interest will be affected by the outcome of Plaintiff's lawsuit. As set out below,

the district court failed to apply the liberal standards for intervention under Rule 24 and incorrectly analyzed the record evidence relating to the nature and extent of the Counties' protectable interests.

> 1. The Counties Have Significant Protectable Interests that Will Be Substantially Affected in a Practical Sense if Plaintiff Prevails in the Litigation.

The Counties exercise broad governmental powers under the laws of California, including implementing critical land use master plans to preserve their prized agricultural assets. Protection of such natural resources is a fundamental interest of state and local governments. *See City of Sausalito v. O'Neill*, 386 F.3d 1186, 1197-1199 (9th Cir. 2003) ("A municipality has a proprietary interest in protecting its natural resources from harm."). The Counties have adopted highly restrictive land use regulations to protect, for the benefit of all county residents, the areas' agricultural heritage, viticulture and green space. These assets are diligently protected. Napa County's long-standing agricultural preservation law is described in *Devita v. County of Napa*, 9 Cal. 4th 763, 770-771, 790-792 (1995), which upheld the County's enactment of the law in 1990, and on the website of the Napa Valley Vinters, *available at* http://www.napavintners.com/about/ab_2_land.aspx (last visited January 30, 2013).

The record demonstrates a substantial relationship between the Counties' protectable interests as sovereigns and Plaintiff's requests to have lands, situated

within the Counties' borders, taken into trust. This is true whether or not the Amended Complaint is construed to request the transfer only of federal surplus lands located within the Counties. That potential limitation on the scope of Plaintiff's land-into-trust request appears in the Prayer for Relief only,[13] while the body of the Amended Complaint continues to request the transfer of other lands *beyond* federally-owned lands (*i.e.*, "lands owned and designated by the Tribe located within the Mishewal Wappo Tribe of Alexander Valley historically aboriginal territory ('Designated Lands')." (ER-415-416 at ¶ 1.)

To the extent Plaintiff seeks the transfer of any of those non-federal "Designated Lands" under Paragraph 1 of the Amended Complaint, those lands are unquestionably within the taxing and regulatory jurisdiction of the Counties and a proposed transfer would directly impair that authority. *See Scotts Valley Band of Pomo Indians*, 921 F.2d at 927-28. There can be no dispute that intervention as of right is warranted in that circumstance. *Id.*

Moreover, to the extent the Amended Complaint seeks a transfer of federal surplus lands, those lands consist of undeveloped public lands that are scattered

---

[13] The Prayer for Relief seeks the transfer of "all public lands held by the Department of the Interior which are not currently in use and are available for transfer that are within the Tribe's historically aboriginal land." (ER-445-446.)

across both Counties. (ER-230, 232.) As explained below, the Counties possess significant and meaningful regulatory authority regarding those vacant lands.

> 2. The Counties Currently Exercise Meaningful
>    Land Use Authority Over Vacant Federal Lands
>    Located Within the Counties.

As a general proposition, state and local governments retain important powers over federal lands located within their territorial jurisdiction. *See Kleppe v. New Mexico*, 426 U.S. 529, 539 (1976) ("Absent consent or cession a State undoubtedly retains jurisdiction over federal lands within its territory"). Thus, state and local governments can enforce civil laws on federal lands provided "it does not conflict with federal law." Salkin, *American Law of Zoning* § 3.2 (5th ed. 2008).

Moreover, and especially relevant to the Counties' demonstration of a significant protectable interest impaired by Plaintiff's lawsuit, "federal law *requires* that opinions of local government officials be taken into account in federal land planning processes. Individuals, communities, and county governments all must be part of the decision-making process." *Id*. (citing Federal Land Policy and Management Act (FLPMA), 16 U.S.C. §§ 1600 et seq., National Forest Management Act (NFMA) 43 U.S.C. §§ 1701 et seq., and National Environmental Policy Act 42 U.S.C. §§ 4321 et seq.) (emphasis added).

> Indeed federal land management statutes . . . encourage
> state and local governments and other interested parties

> to participate in the federal land-management planning
> process.  FLPMA, for example, provides that where
> [Bureau of Land Management] lands are involved, the
> Secretary of the Interior and his designee will 'keep
> apprised of' and 'assure that consideration is given to'
> local land use plans and provide opportunities for
> 'meaningful public involvement of local officials in the
> development of federal land use plans.'

*Id*. (quoting FLMPA Section 202, codified at 43 U.S.C. § 1712(c)(9)).  *See Public Natural Resources Law* 5:4 (2d ed. 2007) ("Congress specified in the [FLPMA] that the Bureau of Land Management must consult with the state in the planning process, and that the *BLM land use plans should adhere to state and local land use provisions to the extent practicable*.") (emphasis added).

The Bureau of Land Management ("BLM")'s stewardship of federal lands within Sonoma and Napa Counties thus is necessarily respectful of the Counties' land use planning, including the Counties' progressive and aggressive agricultural preservation laws.  And because the BLM is obligated to participate in cooperative land use decision-making with respect to the federal lands located within the Counties, the federal government's management of undeveloped federal lands in the Counties is naturally aligned with the Counties' agricultural preservation laws. While the federal government retains "the final authority to determine the best use of federal lands," *California Coastal Comm'n v. Granite Rock Co*. 480 U.S. 572, 596-597 (1987), BLM would never undertake large scale commercial development

-31-

of vacant federal lands in contravention of the Counties' highly visible, politically popular, and economically critical land use laws.

### 3. The Counties Will Be Deprived of Regulatory Authority Over Federal Lands if They Are Taken Into Trust.

The conversion of the federal lands from public properties under BLM management to properties under Department of the Interior trust management, where the lands are held for the exclusive benefit of an Indian tribe, is not a simple transfer from one federal agency to another, as previously suggested by the Federal Defendants. (Dkt. 164.) Rather, that change brings immediate, dramatic, and practical changes to the Counties' regulatory relationship with those lands. The Counties will immediately lose their ability to exercise meaningful land use regulatory authority over the lands, and thus, their ability to ensure compliance with their agricultural preservation laws. Once the lands are converted into trust lands to be held for Plaintiff's benefit, the lands are subject to the primary governmental authority of an Indian tribe that exercises quasi-sovereign jurisdictional authority in opposition to the Counties' jurisdiction, resists all land use restrictions, and openly seeks to develop a large casino that will produce a massive constellation of off-site impacts on adjacent, non-federal surplus lands within the Counties – and in the process substantially undermine the Counties' agricultural preservation laws.

The fact that the federal lands are not taxed by the Counties is of little consequence.  Indeed, the loss of tax revenue for a parcel of vacant land needed to support a Las Vegas-style casino may be quite modest.  Even if Plaintiff were seeking to have county-owned lands taken into trust, the loss of real property taxes would pale in comparison to the negative off-site impacts from any large-scale commercial development on the property.  In either case – whether the tribe receives federal surplus lands or other lands situated within the Counties – it is the off-site impacts felt broadly throughout the Counties that threaten the agricultural economy and environment of the Counties.

Accordingly, the district court erred in finding that the Counties "seemingly" lost their protectable interests in the lawsuit when the Prayer for Relief was amended to focus on federal surplus lands.  The Counties continue to have a deep and abiding interest in whether a tribe, claiming full sovereignty in opposition to the Counties, will be recognized and installed by the federal government on a land base within one or both Counties, from which it will launch its stated plan to build a casino in violation of the Counties' agricultural preservation laws.  That was and remains a strong protectable interest, with a direct and practical relation to the outcome of the lawsuit, and thus supports intervention as a matter of right under Rule 24(a)(2).

4.    The Counties Will Experience Significant Off-Site Impacts
From Any Commercial Development on Now-Vacant Federal
Lands.

Plaintiff's lawsuit directly implicates the Counties' protectable interests in

preserving their viticulture and agricultural economy even if the Counties were not

in a position to block development of the vacant federal lands within the Counties'

borders (a power they currently possess).  This is true whether or not the

undeveloped lands are used for a Casino or some other significant commercial

purpose.   This is because the County lands are contiguous to the federal surplus

lands and any off-site impacts will be felt on those adjacent lands as well as on

County lands beyond the immediate border.

a.    The Counties' Significant Protectable Interests Are
Affected Directly by the Outcome of Plaintiff's Lawsuit
Whether or Not Plaintiff Proceeds With Its Plan to Build
and Operate a Casino.

As an initial matter, there is nothing speculative about the tribe's casino

plans.  The *only* relevance of Plaintiff's demand that the requested trust lands be

declared "restored lands" under the Indian Gaming Regulatory Act is to facilitate

casino gaming.  Plaintiff's stated plan to develop a casino conflicts directly with

the master plans and settled expectations of the Counties and their residents, and

raises specific concerns about a constellation of substantial off-site impacts near

and far from the casino.  Building and operating such a gaming facility on a small

parcel of federal land that has never before been commercially developed (and

-34-

could not be under federal land use policies) would generate a host of direct and immediate threats to the surrounding agricultural economy and green space. The construction phase alone would implicate county building, sanitary and environmental laws, including those designed to minimize air, water, light and noise pollution – but with the Counties lacking any means to apply their laws or enforce compliance. The introduction of permanent buildings, roads, and parking lots would naturally alter storm water runoff for adjacent parcels, while the gaming and other commercial activities on site would place new and greater demands on county infrastructure for potable water and sanitary sewage, as well as for emergency services, including fire and police. But all such impacts arising from Plaintiffs' use of trust lands would arguably fall outside the Counties' jurisdictional authority.

Any other developer of commercial property in the Counties is required to abide by the agricultural preservation rules and other land use and zoning laws that mitigate all such environmental impacts. The Counties' master plans must be respected by everyone residing or working in those Counties in order for them to work. (Dkt. 148 at p. 3; 145 at pp. 3, 17.)

The district court illogically gave no weight to the tribe's express purpose for acquiring trust lands and having them declared "restored lands" under IGRA. This runs counter to Interior's own approach in evaluating land-into-trust

applications.  *See Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak,* 132 S. Ct. 2199, 2211 (2012)  ("[W]hen the [Interior]Secretary obtains land for Indians under [25 U.S.C.] § 465, she does not do so in a vacuum. Rather, she takes title to properties with at least one eye directed toward how tribes will use those lands to support economic development.  The Department's regulations make this statutory concern with land use crystal clear.")

Moreover, given the substantial and immediate off-site impacts from any tribal use and development of previously-vacant federal lands situated within the Counties, the conversion of federal lands to tribal trust lands would impair the Counties' significant protectable interests even if a casino were not planned.  The Counties' prized agricultural heritage, viticulture, and green space are threatened by any substantial commercial operations that bring heavy traffic and visitors into protected areas.  While a large Las Vegas-style casino conflicts most dramatically with the Counties' agricultural preservation laws, any significant commercial development of the vacant federal lands within the Counties would meaningfully conflict with those laws.

        b.      Intervention Is Proper When a State or Local Sovereign May Experience Off-Site Impacts From Activities On Federal Lands.

Caselaw makes clear that state and local governments are permitted to intervene where their sovereign interests stand to be impaired as the result of

litigation arising from activities on federal lands, provided they can identify

practical impacts off-site that they may face depending on the outcome of the

litigation.  For example, in *Forest Conservation Council*, 66 F.3d 1489, an

environmental group sued the U.S. Forest Service seeking to enjoin "any action in

connection with the sale of timber and any other decisions in Northern Goshawk

habitat," a federal preserve.  *Id*. at 1491-1492.  The State of Arizona and Apache

County moved to intervene, citing various economic interests in continued

timbering operations, including tax revenue and contractual rights, that would be

impaired if the injunction issued.  *Id*. at 1492.  This Court did not determine

whether the economic interests were sufficient to support intervention under Rule

24(a)(2) while it noted  noting that other "non-economic interests" of the state and

county supported intervention as of right: "Appellants have asserted other non-

economic interest, such as the environmental health of, and wildfire threat to, state

lands adjacent to national forest, which appellants have a legal duty to maintain."

*Id*. at 1497.  Specifically, the state argued that "suspension of forest management

activities in national forests would increase the likelihood of catastrophic forest

fires, as well as the spread of pests and disease, that could affect [adjacent state

lands]."  *Id*. at 1492.  This Court found the putative intervenors had "asserted

concrete, significant legally protectable non-economic interests that will be directly

affected by the court's judgment regarding injunctive relief, and thus had asserted "protectable interests" within the meaning of Rule 24(a)(2) intervention.  *Id.*

Likewise, the Eighth Circuit in *Sierra Club v. Robertson*, 960 F.2d 83, 84, 86 (8th Cir. 1992), addressed a motion to intervene by the State of Arkansas in a lawsuit brought by the Sierra Club which sought to enjoin certain forest management practices in a national forest in Arkansas.  *Id.* at 86.  The Eighth Circuit held that the State had demonstrated significant protectable interests so as to permit intervention as of right since the state owned certain lands within and adjacent to the National Forest, and also leased land downstream from the forest. The state's sovereign interests in protecting these natural resources were implicated directly by the proposed land management practices which "could degrade the quality of the water flowing from the Forest, destroy wildlife habitat, and diminish the scenic and aesthetic quality of the state."  *Id.* at 84; *see also City of Sausalito*, 386 F.3d at 1197-1199 (holding city demonstrated Article III standing to challenge plan by National Park Service to develop former Fort Baker federal lands "where land management practices of federal land could affect adjacent [city]-owned land") (quoting *Douglas County v. Bobbitt*, 48 F.3d 1493, 1497, 1501 (9th Cir. 1995)).[14]

---

[14]    In its motion to revoke, Plaintiff argued that the Counties "stand in precisely the same position as the Cities with respect to their status as potential

*(Footnote continued on next page)*

The Federal Defendants relied improperly on *Central N.Y. Fair Bus. Ass'n. v. Salazar*, 2010 U.S. Dist. LEXIS 17772 (N.D.N.Y. Mar. 1, 2010) as authority to find no protectable interest within the meaning of Rule 24. (Dkt. 164.) As an initial matter, *Central N.Y. Fair Bus. Ass'n.* addressed Article III standing (not Rule 24 intervention) and reinforces the need for Plaintiff here to come forward with proof that it has suffered an injury in fact to support the district court's subject matter jurisdiction. *Id*. at \*38-\*42 (finding plaintiff citizen's group could not show injury in fact within meaning of Article III from transfer into trust of former military property under 40 U.S.C. § 523). The Counties are not required to establish constitutional or prudential standing as a prerequisite to intervene under Rule 24 at least where, as here, the party on whose side intervention was permitted (*i.e.*, the Federal Defendants) remains in the case. *See Ynigues v. Arizona*, 939 F.2d 727, 731 (9th Cir. 1991) (it is unnecessary to address Art. III standing of putative intervenor when original party on whose side intervention was permitted remains in suit and meets standing requirements); *cf. Perry v. Schwarzenegger*,

---

intervenors." (Dkt. 162 at ¶¶ 3-4.) This is not true. The only way the Cities could be in the same position as the Counties with respect to the federal surplus lands would be if the federal lands bordered the Cities. In contrast, every federal landholding within the Counties of Sonoma and Napa is surrounded by county lands. This is not the case with the Cities.

628 F.3d 1191 (9th Cir. 2011) (reaching issue of proposed intervenor's Art. III

standing to continue suit after original party dropped out).[15]

Moreover, the Article III analysis engaged in by the district court in *Central*

*Fair Bus*iness demonstrates that the plaintiff-citizen's group had failed to plead and

prove facts identifying how it would be injured by the transfer of land from one

federal agency to another. *Id.* at *41-*42. In contrast, the Counties have fully

explained how in a practical and immediate way their protectable interests as

sovereigns are impaired if the vacant federal lands are taken into trust for Plaintiff.

Specifically, the Counties will lose their practical ability to enforce their

agricultural preservation laws. The tribe will be free to develop the property into

harmful, incompatible large-scale commercial uses, including but not limited to a

Las Vegas-style casino, that conflict with and substantially impair the Counties'

master plans. The Counties' significant protectable interests as sovereigns are

implicated directly by Plaintiff's lawsuit and support intervention as a matter of

right under Rule 24(a)(2).

---

[15] Standing presents no obstacle for the Counties for the further reasons that Rule 24's requirements substantially incorporate Article III standing requirements (*see Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 821 n.3 (9th Cir. 2001) and the Counties in any event would be able to separately demonstrate Article III standing under *City of Sausalito*, 386 F.3d at 1197-1199.

    5.    Taking into Trust Vacant Federal Lands Will Create
a Checkerboard of County and Tribal Jurisdiction
That Will Impair the Counties' Regulatory Authority.

Taking into trust any federal lands will produce "a checkerboard of alternating state and tribal jurisdiction" that "[will] seriously burden the administration of state and local governments" and "would adversely affect landowners neighboring the tribal patches." *City of Sherrill,* 544 U.S. at 219. (internal quotations omitted). Such checkerboarding does not exist with respect to the federal public lands located within the Counties as managed by the BLM. While such federal lands are not taxed by the state or counties, the cooperative federal stewardship of the land benefits the residents of Napa and Sonoma Counties and does not produce a checkerboarding of regulatory authority between County lands and federal lands.

In contrast, if the lands are converted to trust status for Plaintiff, the Counties will face a semi-sovereign or quasi-sovereign tribal body seeking to exercise its authority unfettered by state and county land use and environmental restrictions. This will create the pernicious form of alternating tribal/county jurisdictional checkerboarding decried in *City of Sherrill*, and further supports a finding that the Counties have significant protectable interests despite the Plaintiff's 2010 amendment to the Complaint.

E.    The District Court Abused Its Discretion in Rejecting
      Permissive Intervention.

The district court misapplied Rule 24(b)(2) and (3) in finding the Counties'

continued participation in the case would cause "undue delay" and "prejudice" to

the parties, and on that basis rejecting permissive intervention. The language in

subsection (3) relating to delay and prejudice is intended to address, prospectively,

at the time of a putative intervenor's motion, the impact on the litigation should

intervention be permitted. *See Perry v. Proposition 8 Proponents*, 630 F.3d 898,

*1415 (9th Cir. 2011) ("whether intervention *will* prolong or unduly delay the

litigation") (emphasis added) (quoting *Spangler v. Pasadena Bd. of Educ.*, 552

F.2d 1326, 1329 (9th Cir. 1977)). Here, the Counties timely intervened in 2010

with full disclosure of their intent to plead and prove the defenses set forth in a

proposed answer. (Dkt. 43.) The Counties thereafter diligently and in good faith

challenged the district court's subject matter jurisdiction by promptly filing a

motion to dismiss. The Counties did nothing to unduly delay the proceedings.

Asserting substantial (clearly non-frivolous) jurisdictional defenses that the Federal

Defendants *themselves alleged in their answers (but had not yet pursued) and

agreed might be proper subjects of discovery*[16] cannot amount to "undue delay"

---

[16]    *See* Parties' Joint Report Pursuant to Fed. R. Civ. P. 26(f), dated March 1, 2012
        ("The Federal Defendants agree with the Counties' position, set forth below,
        that discovery may, however, be appropriate on standing and laches.") (Dkt.
        163.)

-42-

within the meaning of Rule 24(b)(3) as a matter of law. The district court's "findings" of delay and prejudice, whether retrospective or prospective, are clearly erroneous as a matter of fact, as well as contrary to law, and the district court manifestly abused its discretion in terminating the Counties' continued participation in the case under Rule 24(b)(2).

## II. The District Court Erred in Failing to Resolve the Threshold Jurisdictional Issue of Plaintiff's Standing.

The district court never required Plaintiff to meet its burden to establish Article III standing by pleading and proving a relationship between its current members and those Indians who were impacted by the allegedly wrongful termination of the AVR. The district court's errors in this regard are numerous and substantial.

### A.     Standard of Review

This Court reviews *de novo* the denial of a motion to dismiss under Rule 12(b)(1) asserting a lack of standing and subject matter jurisdiction. *See Preminger v. Peake*, 552 F.3d 757, 762 n.3 (9th Cir. 2008); *see Savage v. Glendale Union High School Dist. No. 205*, 343 F.3d 1036, 1040 (9th Cir. 2003) (reviewing *de novo* district court decision denying motion to dismiss under 12(b)(1) premised on Article III factual challenge). A plaintiff facing a Rule 12(b)(1) factual challenge to standing must come forward with facts – in the form of affidavits or other evidence – to establish Article III standing:

> In evaluating the Rule 12(b)(1) motion to dismiss, the district court considered affidavits furnished by both parties. This is proper because Rule 12(b)(1) attacks on jurisdiction can be either facial, confining the inquiry to allegations in the complaint, or factual, permitting the court to look beyond the complaint. Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction.

*Savage*, 343 F.3d at 1040 (citations omitted).  *See also Norkunas v. Wynn Las Vegas, LLC*, 343 Fed. App'x. 269 (9th Cir. 2009) (citations omitted).

If the district court makes factual findings with respect to a plaintiff's standing (which did not happen here) those findings are reviewed for clear error. *Preminger*, 552 F3d at 762 n.3.

### B.   Plaintiff Failed to Plead and Prove Standing.

Plaintiff was required to establish a relationship between the members of the current tribal plaintiff and the distributees who received the assets of the AVR upon their distribution in 1959 *(see Tillie-Hardwick*, *supra,* at 6), and/or the Alexander Valley Indians who occasionally resided on the AVR and who arguably suffered a cognizable injury by reason of the rancheria's termination.  *See United Tribe of Shawnee Indians v. United States*, 253 F3d 543, 548 n.2 (10th Cir. 2001).

The sole allegation in the Amended Complaint that is devoted to Plaintiff's alleged standing reads in pertinent part as follows:

-44-

> [p]laintiff is an American Indian Tribe consisting of
> Indian members and their descendants, and/or their
> Indian successors in interest, for whose benefit the
> United States acquired and created the Mishewal Wappo
> Tribe of Alexander Valley, a parcel of land located in
> Sonoma County, California.[17]

(ER-417 at ¶ 5.)

In support of their standing challenge, the Counties submitted the 100-plus page report of Stephen Dow Beckham, Ph.D. providing "a history of the creation, occupation, and termination" of the AVR (ER-292) and presented findings and conclusions which included the following:

- Native American occupancy of the AVR fluctuated from 1910 to 1951, with a maximum occupancy of fifty-nine residents in 1940, and a minimum occupancy of three residents in 1951. (ER-325-326.)

- None of the three residents of the Rancheria in 1951 were Wappo or Pomo Indians. (ER-325-326, 328-329.)

- "The Wappo never displayed any measure of tribal government of any kind at the [Alexander Valley R]ancheria. There is no record of governing documents, officers, minutes, dealings of a tribe with the United States, enrollment of Wappo children at B.I.A. schools or admittance to B.I.A. hospitals, or other measures of prior recognition." (ER-331.)

- "The modern Mishewal Wappo tribe is primarily the descendants of Gilbert and Helen (Van Pelt) Salsedo.

---

[17]  Apart from the gross mistakes in this allegation (the United States does not "create" Indians tribes and Plaintiff is not a "parcel of land") the allegation is bare-bones, conclusory and legally insufficient to assert standing.

-45-

> The Salsedo family never appeared in any census of the [Alexander Valley R]ancheria. . . . There is no evidence the Salsedo family ever resided on the rancheria. None of its members participated in the distribution of assets of the rancheria at termination." (ER-330.)

In response to Dr. Beckham's detailed submission, Plaintiff offered the three-page affidavit of Edward D. Castillo, a professor of Native American Studies at Sonoma State University, who called Professor Beckham's conclusions "incorrect" and his methodology "flawed." (ER-183-184.) Professor Castillo offered no affirmative evidence, however, regarding any relationship between the modern tribal plaintiff and the Indians of the AVR.

Despite Plaintiff's glaring failure to satisfy its burden on the motion, the district court gave Plaintiff a "free pass" and commented that "the evidence supplied by the Counties is insufficient to create a factual dispute as to that issue." (ER-14.) The court opined that "[s]imply because the historic tribe had dispersed and had no formal existence *does not mean that no tribal identity was maintained*, or that the member of the current members [sic] of the Tribe have no connection to such an identity" (emphasis added). (ER-15.) These speculative observations serve only to highlight the absence of proof submitted by Plaintiff. The district court could not cite any evidence to support its conjecture because the Plaintiff offered none (despite presenting an "expert" affidavit) and because the Federal Defendants possessed no such evidence. Thus, the party with the burden of proof

-46-

on standing offered nothing to contradict Professor Beckham's expert report and conclusions.[18]

In the absence of a perceived factual dispute, the district court proceeded to convert this branch of the Counties' motion from one predicated on Rule 12(b)(1) to one founded on Rule 12(b)(6). (Dkt. 145.) This was error. As a preliminary matter, a motion to dismiss for want of standing is properly brought pursuant to Rule 12(b)(1), and not Rule 12(b)(6), because standing pertains to a federal court's subject matter jurisdiction. *White v. Lee,* 227 F.3d 1214, 1242 (9th Cir. 2000) ("Because standing and mootness both pertain to a federal court's subject matter

---

[18] The district court accorded Dr. Beckham's conclusion that the membership of the modern-day Mishewal Wappo descends from a family that never resided on the Alexander Valley Rancheria "little weight, since the Counties admit in their pleadings that they have not reviewed the Tribe's current membership list." (ER-172.) During oral argument of the Counties' motion to dismiss, however, the district court was advised that the Counties endeavored to obtain that membership list through a FOIA request upon the Federal Defendants, but the request was denied on the basis of asserted privacy issues. (ER-172.) Subsequently, the Counties' document request upon Plaintiff sought production of "[a]ll documents constituting or relating to current and former tribal membership, enrollment, and census lists of Plaintiff, including but not limited to Plaintiff's Certified Tribal Membership List dated January 27, 2010." (ER-82.) No response to this Joint Request was ever provided by Plaintiff. Plaintiff's steadfast refusal to produce its membership list precludes it from meeting its burden of establishing its standing. The district court, however, rewarded Plaintiff for its refusal, by rejecting the Counties' standing challenge, in part, on the basis that the Counties "have not reviewed the Tribe's current membership list." (ER-15.) This analysis is as illogical as it is unfair since it reverses the burdens placed on the parties under Rule 12(b)(1). *See Savage,* 343 F.3d 1036, *supra.*

-47-

jurisdiction under Article III, they are properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), not Rule 12(b)(6)."); *see Carijano v. Occidental Petroleum Corporation, et al.,* 643 F.3d 1216, 1227 (9th Cir. 2011) ("Article III standing is a species of subject matter jurisdiction.")

In reviewing a Rule 12(b)(1) motion for lack of jurisdiction, a court must first determine whether the movant presents a facial or factual attack. *Safe Air for Everyone v. Meyer,* 373 F.3d 1035, 1038 (9th Cir. 2004); *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004) ("A rule 12(b)(1) jurisdictional attack may be facial or factual."). In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. *Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). Thus, in evaluating a facial challenge courts apply the Rule 12(b)(6) standard to the complaint – accepting as true all material allegations, and construing those facts in favor of the nonmoving party. *Warth v. Selden*, 422 U.S. 490, 501 (1975).

By contrast, in a factual attack the challenger disputes the truth of allegations that, on their face, sufficiently invoke federal jurisdiction. *Safe Air for Everyone,* 373 F.3d at 1038; *Dreier v. United States of America*, 106 F.3d 844, 847 (9th Cir. 1997). To support factual attacks under Rule 12(b)(1), a movant may rely on affidavits or any other evidence properly before the court. *Dreier,* 106 F.3d at 847; *see also McCarthy v. Unites States,* 850 F.2d 558, 560 (9th Cir. 1988).

Here, the district court recognized explicitly that the Counties were asserting a factual challenge to Plaintiff's standing. (ER-14; ER-187 at ¶ 5.) Nevertheless, the court brushed aside the Counties' considerable and largely uncontroverted evidence on standing, including an expert report supported by contemporaneous historical records from the National Archives, U.S. Census Bureau records, and genealogical information, and converted this branch of the motion from a Rule 12(b)(1) application to an application under Rule 12(b)(6), whereupon it accepted as true the inherently illogical allegations of Paragraph 5 of the Amended Complaint. *Id.* The court cited no legal authority for the conversion,[19] and its decision to do so runs afoul of the well-established rule that where a factual challenge to subject matter jurisdiction is made *"no presumptive truthfulness attaches to plaintiff's allegations,* and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional

---

[19] The only appropriate circumstance for conversion of Rule 12(b)(1) motion to one founded on Rule 12(b)(6) is where resolution of the jurisdictional question is intertwined with the merits of the case. *Augustine v. United States,* 704 F.2d 1074, 1077 (9th Cir. 1983); *Safe Air for Everyone,* 373 F.3d at 1039-40. This occurs only where subject matter jurisdiction is conferred by the same statute that creates the substantive claim asserted. *Id.* Here, the jurisdictional question arises from Plaintiff's lack of standing, not from the California Rancheria Act or the Administrative Procedures Act, which arguably supply the statutory predicates for Plaintiff's claims.

claims." *Augustine v. United States,* 704 F.2d 1074, 1077 (9th Cir. 1983) (emphasis added); *see also Safe Air for Everyone,* 373 F.3d 1035.

Even the decision in *Sizova v. National Inst. of Standards & Tech.*, 282 F.3d 1320 (10th Cir. 2002), cited by the district court, provides that "[w]hen as here, a party's Rule 12(b)(1) motion challenges the facts upon which subject matter jurisdiction depends, a *district court may not presume the truthfulness of the complaint's factual allegations*." (emphasis added).  *Id.* at 1324.  That is precisely what the district court did, however, by rejecting the evidence properly introduced by the Counties, and then accepting as truthful Plaintiff's inadequate allegation of standing.

Moreover, the district court's deferral of the factual inquiry required under Rule 12(b)(1) violated the core requirement that standing is to be determined at the inception of a lawsuit.  *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 571 (1992); *Biodiversity Legal Found. v. Badgley,* 309 F.3d 1166, 1171 (9th Cir. 2002).  The court should have proceeded immediately to a factual hearing to address and resolve the standing issue after acknowledging that the issue was "complex" and determining that Plaintiff should be given an opportunity to respond.  (ER-10-21.) Instead, the court avoided the issue altogether, and ultimately ejected the Counties from the litigation without permitting discovery into Plaintiff's standing (which the court had acknowledged to be a proper subject for inquiry).  *Id.*

At a minimum, the district court should have suspended other activities in the litigation in order to hear and resolve the fundamental question of whether Plaintiff had standing sufficient to support subject matter jurisdiction.  The district court's failure to do so, or to dismiss the action for lack of subject matter jurisdiction, constitutes reversible error.

## III.   The District Court Lacks Jurisdiction Over This Untimely-Filed Action.

Jurisdiction is a threshold matter to be addressed by this Court on every appeal. *Marley*, 567 F.3d 1030 ("As a threshold matter we must decide whether we have jurisdiction over a claim that does not meet the deadlines contained in § 2401(b)."). "On every writ of error or appeal, the first and fundamental question is that of jurisdiction, first of this court, and then of the court from which the record comes*." Molski v. Levon Investments, LLC*, 231 Fed. App'x. 685 (9th Cir. 2007) (quoting *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998.  As demonstrated below, the district court below did not have jurisdiction over this untimely-filed action.

### A.   Standard of Review

This Court reviews *de novo* the denial of a motion to dismiss based on the statute of limitations. *See Johnson v. Lucent Techs. Inc.*, 653 F.3d  1000, 1005 (9th Cir. 2011).  Whether a limitations period bars a claim is a question of law reviewed *de novo* (*see Rouse v. United States Dep't of State*, 567 F.3d 408, 415 (9th Cir.

2009), as is a ruling on which statute of limitations to apply.  *See Johnson*, 653

F.3d at 1005.

      **B.**     <u>28 U.S.C. § 2401(a) Establishes a Jurisdictional Period of Limitations</u>.

      The district court properly determined that the six-year limitations period of

28 U.S.C. § 2401(a) applies to Plaintiff's claims.  Section 2401(a) provides, in

pertinent part, that "every civil action commenced against the United States shall

be barred unless the complaint is filed within six years after the right of action first

accrues."  This period applies to Indian tribes "in the same manner as against any

other litigant seeking legal redress or relief from the government."  *Hopland Band

of Pomo Indians v. United States*, 855 F.2d 1573, 1576 (Fed. Cir. 1988).

      As Plaintiff's claims are all grounded on the same operative facts, *i.e.*, the

Interior Secretary's allegedly improper termination of the AVR fifty years prior to

commencement of this action, Plaintiff's claims have been foreclosed for decades

by Section 2401(a).

      **C.**     The District Court's Interpretation of Section 2401(a)
                 <u>As Non-Jurisdictional Is Legally Incorrect</u>.

      The district court noted that "the Counties' ability to maintain an argument

based on § 2401(a) depends on whether the statute is jurisdictional or procedural."

(ER-16.)  In concluding that Section 2401(a) erects only a procedural, rather than a

jurisdictional bar (ER-18), and holding that "the Counties [therefore] cannot

maintain it as a procedural defense," the court denied that branch of the Counties' motion to dismiss which was predicated on the gross untimeliness of this action.[20]

In reaching its conclusion the district court relied principally on this Court's opinion in *Cedars-Sinai Medical Center,* 125 F.3d 765 (9th Cir. 1997). There, this Court considered the timeliness of a declaratory judgment action challenging a policy of the Health Care Financing Administration. Defendant Secretary of Health and Human Services argued that the action was barred by the six-year limitations period established by Section 2401(a). *Id.* at 769. In response to the Plaintiff's assertion that the limitations defense had been waived, the Secretary argued that Section 2401(a) is jurisdictional and thus not susceptible to waiver. *Id.* at 770. This Court rejected that assertion, holding that "[b]ecause the statute of limitations codified at 28 U.S.C. § 2401(a) makes no mention of jurisdiction but erects only a procedural bar . . . we hold that § 2401(a)'s six-year statute of limitations is not jurisdictional, but is subject to waiver." *Id.*

---

[20]  The district court also mistakenly observed that Section 2401(a) affords a defense *only* to the Federal Defendants, and apparently believed the Federal Defendants had not asserted that limitations defense. (ER-16, 19.) In fact, the Federal Defendants *did* assert the limitations defense in their answers to both the initial and amended complaints and the record does not show an express waiver of that defense by the Federal Defendants. (ER-540; ER-66.) Moreover, *John R. Sand,* 552 U.S. 130, makes clear that the district court had an unflagging duty to determine, *sua sponte*, whether Section 2401(a) is jurisdictional and deprived the court of subject matter jurisdiction. *Id.* at 132.

This reasoning is no longer valid, however, in light of the Supreme Court's more recent decision in *John R. Sand & Gravel Co.*, 552 U.S. 130. There, the Supreme Court addressed 28 U.S.C. § 2501, which establishes a six-year limitations period applicable to claims asserted against the government in the United States Court of Federal Claims. *Id.* at 132. Section 2501 sets forth a limitations bar in virtually identical language to that found in Section 2401(a) (*i.e.*, "Every claim . . . *shall be barred* unless the petition thereon is filed within six years after such claim first accrues.") 28 U.S.C. § 2501 (emphasis added). The Supreme Court held that Section 2501 constitutes a jurisdictional bar.

The parallels between Sections 2401(a) and 2501 have long been recognized. *See Hopland Band of Pomo Indians,* 855 F.2d at 1577 ("there is certainly no distinction between the *companion statutes* of limitations found at section 2401(a) and section 2501.") (emphasis added) (*citing Walters v. Sec'y of Def.*, 233 U.S. App. D.C. 148, 725 F.2d 107, 114 (D.C. Cir. 1983); *Hoffman v. United States*, 266 F.Supp.2d 27, 40 n.13 (D.D.C. 2003) ("Section 2501 and § 2401 have the same accrual language"). Therefore, under a proper reading of the Supreme Court's decision in *John R. Sand & Gravel*, Section 2401(a) is jurisdictional and this Court's holding in *Cedars-Sinai* is no longer valid.

The U.S. Court of Appeals for the Eleventh Circuit has long held Section 2401(a) to be a jurisdictional period of limitations. *See Baxter v. United States*,

451 Fed. App'x. 868, 870 (11th Cir. 2012) ("[w]hile the government had not relied on the statute of limitations as a defense, the limitations period in § 2401(a) is jurisdictional and cannot be waived.") (citing *Ctr. for Biological Diversity v. Hamilton*, 453 F.3d 1331, 1334 (11th Cir. 2006) ("Unlike an ordinary statute of limitations, § 2401(a) is a jurisdictional condition attached to the government's waiver of sovereign immunity.")).  The Federal Circuit in 2008, following the decision in *John R. Sand & Gravel,* held Section 2401(a) to be jurisdictional, finding that "the Supreme Court's rationale [in John R. Sand] applies with equal force [to 28 U.S.C. § 2401(a)] because both are 'jurisdictional' statutes of limitations." *Georgalis v. United States Patent & Trademark Office*, 296 Fed. App'x 14, 16 (Fed. Cir. 2008).

Other courts have relied specifically on *John R. Sand & Gravel* to hold that Section 2401(a) sets out a jurisdictional limitations period, concluding that *John R. Sand* "forecloses" the prior analysis that distinguished § 2501 and § 2401(a).  *See W. Va. Highlands Conservancy v. Johnson*, 540 F. Supp. 2d 125, 142 (D.D.C. 2008); *Howard v. Blank,* 2012 WL 4096370 (D.D.C., Sept. 19, 2012).

This Court cast substantial doubt on the continued validity of *Cedars-Sinai* in *Marley,* 567 F.3d 1030, which addressed the limitations period under 28 U.S.C. § 2401(b) applicable to tort claims against the United States.  In holding Section 2401(b) jurisdictional, this Court noted that "*John R. Sand & Gravel* itself is

instructive."  567 F.3d at 1035, 1038.  Furthermore, this Court noted that "Section 2401(a) is not before us, so we need not decide here whether *Cedars-Sinai* can survive after *John R. Sand & Gravel*.") *Id.*

Likewise, in *Aloe Vera of America, Inc. v. United States*, 580 F.3d 867, 872 (9th Cir. 2009), this Court held that 26 U.S.C. § 7431(d), the two-year limitations period applicable to taxpayer actions for wrongful disclosure, is also a jurisdictional period of limitations, citing *John R. Sand & Gravel*.  Significantly, in rejecting the plaintiff's contention that *Cedars-Sinai* compelled a different result, this Court questioned the validity of its earlier ruling:  "To the extent that *Cedars-Sinai* is still valid after *John R. Sand* . . . ."  *Id.* at 872.

This Court's open questioning of the continued validity of *Cedars-Sinai* and the substantial authority outside this circuit that expressly holds Section 2401(a) to be jurisdictional was not enough to sway the district court, however, which held that *Cedars-Sinai* "nonetheless remains the law of this circuit and has been recently been applied as such." (citing *Wilton Miwok Rancheria v. Salazar*, 2010 U.S. Dist. LEXIS 23317, at *15 (N.D. Cal. Feb. 23, 2010).  (ER- 17.)  In so holding, the district court relied on several district court opinions from within the Ninth Circuit which declined to find that *John R. Sand & Gravel* alters this Court's pronouncement in *Cedars-Sinai*.  Three of those decisions, however, were issued prior to this Court's expressions of doubt as to the continued viability of *Cedars-*

*Sinai. See Sierra Club v. Johnson*, 2009 U.S. Dist. LEXIS 14819, at *25 (N.D. Cal. Feb. 25, 2009); *Crosby Lodge, Inc. v. Nat'l Indian Gaming Comm'n*, 2008 U.S. Dist. LEXIS 98001, at *14 (D. Nev. Dec. 3, 2008); *Public Citizen, Inc. v. Mukasey,* 2008 U.S. Dist. LEXIS 81246, at *24 (N.D. Cal. Oct. 9, 2008). The only case decided after the June 1, 2009 decision in *Marley* and the September 2, 2009 decision in *Aloe Vera of America* acknowledged that the Ninth Circuit "has yet to examine the continuing vitality of *Cedars-Sinai* in light of *John R. Sand,*" and certified the question for immediate appeal. *See Wilton Miwok Rancheria*, 2010 U.S. Dist. LEXIS 23317, at * 14.[21]

This Court should now recognize and declare that its ruling in *Cedars-Sinai* has been overruled by the Supreme Court, and confirm that 28 U.S.C. § 2401(a) establishes a jurisdictional period of limitations. The district court therefore lacks jurisdiction over this untimely-commenced action.[22]

---

[21] Pursuant to 28 U.S.C. § 1292(b), this Court denied the petition for permission to appeal by order dated May 20, 2010 (Case No. 10-80062).

[22] As an apparent afterthought, Plaintiff invoked the doctrine of equitable tolling in opposing the Counties' motion to dismiss. (Dkt. 147.) No evidentiary support for application of the doctrine was offered by Plaintiff, and the district court did not credit this belated assertion in its order denying the Counties' motion. Nevertheless, the doctrine of equitable tolling is unavailable to Plaintiff. First, the language and form of 28 U.S.C. § 2401(a) make clear that Congress did not intend that the doctrine would apply to the six-year limitations period established by that Section. Second, this Court's reasoning in *Marley,* 567 F.3d 1030, where the doctrine was held not to apply to Section 2401(b), suggests that a similar holding should be made with regard to Section

*(Footnote continued on next page)*

## CONCLUSION

The district court erred in revoking the Counties' status as intervening defendants and thereby removing from the case the only parties prepared to demonstrate that the district court lacks subject matter jurisdiction to hear Plaintiff's lawsuit because:  (i) Plaintiff lacks Article III standing, and (ii) that lawsuit was commenced nearly fifty years too late under the applicable statute of limitations, which is jurisdictional.  Accordingly, the Counties respectfully ask this Court to reverse the order revoking the Counties intervenor status; declare the action time-barred under 28 U.S.C. § 2401(a); and hold that the district court lacks subject matter jurisdiction to entertain Plaintiff's lawsuit based on the patent untimeliness of the action.

In the alternative, if this Court does not find subject matter jurisdiction lacking under Section 2401(a), the Counties ask that this Court find subject matter jurisdiction lacking based on Plaintiff's complete failure to meet its burden to plead and prove Article III standing.

---

2401(a).  Finally, the allegedly misleading conduct of DOI which Plaintiff suggested could operate to toll the six-year limitations period occurred exclusively *after* the limitations period had already expired, and thus could not serve as the factual basis for tolling.

Finally, and also in the alternative, the Counties ask that their status as intervenors-defendants be restored so that they might continue to participate in the action and assert defenses as if they had been named as original defendants.

Dated:  San Francisco, California
        January 30, 2013                    Respectfully submitted,


                                            ____/s/ Michael S. Cohen____
                                            NIXON PEABODY LLP
                                            Attorneys for
                                            Intervenors-Defendants-Appellants
                                            County of Napa and County of
                                            Sonoma
                                            MICHAEL S. COHEN, ESQ.
                                            DAVID H. TENNANT, ESQ.
                                            MATTHEW FRANKEL, ESQ.
                                            One Embarcadero Center, Suite 1800
                                            San Francisco, California 94111
                                            (415) 984-8200

14218918

**Form 6.    Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements**

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

☒ this brief contains <u>13,776</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

☐ this brief uses a monospaced typeface and contains_____ lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

☒ this brief has been prepared in a proportionally spaced typeface using *(state name and version of word processing program)* <u>Microsoft Word 2010</u> *(state font size and name of type style)* <u>14-point Times New Roman</u> *, or*

☐ this brief has been prepared in a monospaced spaced typeface using *(state name and version of word processing program)* _____ with *(state number of characters per inch and name of type style)* _____ .

Signature    | /s/ Michael S. Cohen |

Attorney for | Intervenors-Defendants-Appellants |

Date | Jan 30, 2013 |

9th Circuit Case Number(s) | 12-17360

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) | January 30, 2013 | .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format) | /s/ Michael S. Cohen

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) | | .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users.  I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format) |